P. P. MARRION BLACKSMITH & WRECKING CO. *v.* THE STEAMBOAT "H. C. YAEGER."\*

(*Circuit Court, E. D. Missouri.* March 20, 1880.)

ADMIRALTY—JURISDICTION—HOME PORT—SERVICES TO STRANDED BOAT.—Services rendered a steamboat stranded upon a bar in the Mississippi river, some 65 or 70 miles below St. Louis, in a voyage from that port to New Orleans, are not to be regarded as having been rendered in her home port, although such boat may have been at the time within the territory of the state of Missouri.

SERVICES RENDERED AT REQUEST OF MASTER—PRESUMPTIONS.—Where such services were rendered at the request of the master, it will be presumed that they were necessary, and properly rendered on the credit of the vessel.

CLAIM FOR SERVICES—ASSIGNMENT.—The owners of one-half of the claim for such services, who have obtained the other half by assignment, are entitled to sue for the whole.

LIEN—SALVAGE.—Although the services rendered were not in the nature of salvage, the right of the libellants to a lien was not thereby affected.

\*See *Monongahela Nav. Co.* v. *Steam Tug* "*Bob Connell*," *ante*, 218.

In admiralty.   Appeal from the district court

*B. H. Kern,* for libellants.

*W. F. Smith,* for appellant.

McCRARY, J.   The steamboat "H. C. ,Yaeger" left the port of St. Louis about the twenty-fourth of November, 1878, bound upon a voyage down the Mississippi river to New Orleans.   On the way she grounded at a place called Kaskaskia Bend, about 65 or 70 miles below St. Louis.   After making unsuccessful efforts to free his vessel from the bar on which she was fast, the master engaged the services of the tug-boat "Wild Boy," then in the neighborhood, and owned by the libellants, though chartered to Burgess & Co., on terms to be hereafter stated.   The tug, with a small crew, went to the relief of the "Yaeger," taking a barge along-side, into which a portion of the cargo was placed, and after some hours' labor the vessel was pried from the bar on which she was grounded and enabled to proceed upon her voyage.   The officers of the two vessels could not agree as to the price to be paid for these services, and hence this suit.   There was judgment below for $350 and the claimants appeal.   Upon due consideration I have reached the following conclusions:

1. That under the circumstances the steamboat "Yaeger" is not to be regarded as having been in her home port at the time the services were rendered.   She was not in port, but launched and afloat, proceeding on her voyage, and, therefore, clearly within the admiralty jurisdiction, whether within or without the territorial limits of the state of Missouri.

2. The fact that the services were rendered at the request of the master, and for the purpose of relieving the vessel from her stranded condition, raises a strong presumption that they were properly rendered on the credit of the vessel, and were necessary; and the claimants, in order to overcome this presumption, must show affirmatively that the credit was given exclusively to the owners.   This they have not done.

3. At the time the service was rendered the tow-boat "Wild Boy" was in the possession of Burgess & Co., who had chartered it.   These charterers were to pay the owners $20 per day, and one-half of what was earned by the boat in such

service as that now in controversy. The libellants, therefore, who are the owners of the "Wild Boy," were the owners of one-half the claim originally, and, having obtained the other half by assignment, my opinion is that they are entitled to sue for the whole.

4. Whether the service was in the nature of salvage or not, makes no difference as to the right of libellants to a lien. If, however, this were a case of salvage, they might recover extra compensation. In my opinion the circumstances were not so extraordinary, nor the peril sufficiently great, to justify an extra allowance, on the theory that the services were in the nature of salvage. I am strengthened in this view by the fact, which appears in evidence, that the bill, as at first presented by the master of the "Wild Boy," was for $175—only the evidence is very conflicting as to what would have been a reasonable compensation, as it is also upon the question whether there was a contract to render the service at $7 per hour; but, inasmuch as the sum of $175 was originally fixed by the master of the tug, who was the person who made the contract and rendered the service, and, inasmuch as that is about the sum that is established by the weight of the evidence, I have adopted it as the amount of the libellants' recovery.

The decree below is modified accordingly, and the vessel is charged with a lien for $175, with interest and costs.